No. 23-11670-C

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

RACHAEL DEMARCUS, et al.,

Plaintiff-Appellants,

v.

UNIVERSITY OF SOUTH ALABAMA, et. al.

Defendant-Appellees.

*Appeal from the United States District Court*
*for the Southern District of Alabama, Southern Division*
*Hon. Kristi DuBose*

## APPELLANT'S BRIEF

## ORAL ARGUMENT REQUESTED

Diandra "Fu" Debrosse Zimmermann
Kenneth P. Abbarno
Eli J. Hare
Elton H. Darby III
**DICELLO LEVITT LLP**
505 20th Street North, Suite 1500
Birmingham, Alabama 35203
(205) 855-5700
fu@dicellolevitt.com
kabbarno@dicellolevitt.com
ehare@dicellolevitt.com
edarby@dicellolevitt.com

## Certificate of Interested Persons
## & Corporate Disclosures Statement

Plaintiff-Appellants provide the following list of all judges, attorneys, persons, associations of persons, firms, partnerships, and corporations known to have an interest in the outcome of this appeal:

Abbarno, Kenneth P., *Counsel for Plaintiff-Appellants*

Bitzer, Windy C., *Counsel for Defendant-Appellees*

Chilcoat, Rob, *Defendant-Appellee*

Collins, Celia J., *Counsel for Defendant-Appellees*

Darby III, Elton H., *Counsel for Plaintiff-Appellants*

DeMarcus, Rachel, *Plaintiff-Appellant*

DiCello Levitt LLP, *Counsel for Plaintiff-Appellants*

Dubose, Kristi K., *United States District Judge*

Erdmann, Joel, *Defendant-Appellee*

Frisbey, Jinni, *Defendant-Appellee*

Gandolfo, Patricia, *Defendant-Appellee*

Hand Arendall Harrison Sale LLC, *Counsel for Defendant-Appellees*

Hare, Eli J., *Counsel for Plaintiff-Appellants*

i

Johnson, Hannah, *Plaintiff-Appellant*

Johnstone Adams LLC, *Counsel for Defendant-Appellees*

Jones, Meaghan, *Plaintiff-Appellant*

Kazee, Hannah, *Plaintiff-Appellant*

Maddux, Hannah, *Plaintiff-Appellant*

Meeks-Rydell, Alexis, *Defendant-Appellee*

Moore, Chris, *Defendant-Appellee*

Pilcher, Mary E., *Counsel for Defendant-Appellees*

Rehm, Elizabeth, *Counsel for Defendant-Appellees*

Silver, Alexis, *Plaintiff-Appellant*

Soboleski, Maddie, *Plaintiff-Appellant*

Stein & Pilcher LLC, *Counsel for Defendant-Appellees*

Tipping, Caitlin, *Plaintiff-Appellant*

University of South Alabama, *Defendant-Appellee*

Zimmermann, Diandra "Fu" Debrosse, *Counsel for Plaintiff-Appellants*

*/s/ Diandra "Fu" Debrosse Zimmermann*
Diandra "Fu" Debrosse Zimmermann
*Counsel for Plaintiff-Appellants*

## Statement Regarding Oral Argument

Plaintiffs-Appellants ("Plaintiffs"), former University of South Alabama student-athletes who were sexually harassed and abused by their head volleyball coach, request oral argument. Plaintiffs alleged that the University of South Alabama ("South") knew of the risk that their coach posed, both before it hired the coach and while the harassment was ongoing. The district court improperly analyzed the required pleading standard and dismissed Plaintiffs' 20 U.S.C. § 1681 *et seq.* ("Title IX") and 42 U.S.C. § 1983 ("Section 1983") claims on motions to dismiss. Oral arguments are needed before this Court due to the complexity of the facts and the application of the appropriate pleading standard under Title IX and Section 1983.

# Table of Contents

**Certificate of Interested Persons  & Corporate Disclosures Statement** ..................................................................................... i

**Statement Regarding Oral Argument** .............................................. iii

**Table of Contents** .................................................................................. iv

**Table of Authorities** ............................................................................. vi

**Statement of Jurisdiction** .................................................................. ix

**Statement of the Issues** ........................................................................ 1

**Statement of the Case** .......................................................................... 2

I.    **Nature of the Case** ....................................................................... 2

II.   **Statement of the Facts** .............................................................. 4

    A.    Meeks-Rydell inappropriately touched Plaintiffs, engaged in sexual conversations, forced them to undergo "floor hugs," "butt-pinching," and to "use her boobs as pillows," and subjected them to physical and emotional abuse when they did not submit to her unwanted sexual advances ........................................... 6

    B.    South knew that Meeks-Rydell had a history of sexually abusing her players at other schools and was on actual notice of Meeks-Rydell's inappropriate behavior at South. ...................................................................... 14

    C.    South ignored Plaintiffs' complaints and actively sought to conceal details of the harassment and abuse they suffered from their coach .................................... 17

III.  **Course of the Proceedings and Disposition in the Court Below** ........... 19

IV.  **Standard of Review** ..................................................................... 21

**Summary of the Argument** ................................................................. 23

**Argument** ............................................................................................... 25

I.    **The district court erred by dismissing Plaintiffs' Title IX claims.** ....... 25

A.    Plaintiffs pled facts that multiple Defendants were "appropriate persons" under Title IX. ........................................................................................ 26

B.    The district court committed error by applying a heightened Title IX actual notice standard. ................................................................................. 34

C.    South failed to supervise Meeks-Rydell, who it knew had a prior reputation for sexual harassment, and failed to act when it was directly informed of her sexual harassment of Plaintiffs. The district court erred in holding that Plaintiffs did not plead deliberate indifference. ...................... 41

**II.    The district court erred by dismissing Section 1983 claims. ................. 45**

A.    The district court's Order disregards Supreme Court and Eleventh Circuit precedent that establishes a right of bodily integrity to be free from sexual abuse and excessive corporal punishment. ......................................... 47

B.    Plaintiffs plausibly allege Meeks-Rydell's violation of Plaintiffs' constitutional right of bodily integrity. ............................................... 49

C.    Plaintiffs plausibly allege supervisory liability against Erdmann, Frisbey, and Moore. ..................................................................................... 52

D.    Plaintiffs plausibly allege that Defendants Erdmann, Frisbey, Moore, Chilcoat, and Gandolfo actively participated in Meeks-Rydell's violations of Plaintiffs' constitutional rights. ........................................................... 55

E.    Plaintiffs plausibly allege "arbitrary, egregious, and conscience-shocking" conduct. ........................................................................................ 58

F.    The district court erred in finding the University Defendants were entitled to qualified immunity. ..................................................................... 62

**Conclusion** ................................................................................ **63**

**Certificate of Compliance** .............................................. **xii**

**Certificate of Service** ...................................................... **xiii**

# Table of Authorities

Cases

*Albright v. Oliver*, 510 U.S. 266 (1994)....................................................59

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010).28,  30, 41

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................21, 33

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................21, 22, 30

*C.K. v. Wrye*, 2015 WL 5099308 (M.D. Pa. Aug. 31, 2015)....................30

*C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536 (7th Cir. 2022) (en banc) .......................................................................................... 36, 37, 38, 39

*Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979)..................................25

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) ............ 46, 58, 61

*Dacosta v. Nwachukwa* 304 F.3d 1045 (11th Cir. 2002) ........................58

*Davis v. Carter*, 555 F.3d 979 (11th Cir. 2009)......................................46

*Davis v. DeKalb Cnty. Sch. Dist.*, 233 F.3d 1367 (11th Cir. 2000)... 29, 58

*Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999) ................25, 42

*Doe A v. Plainfield Community Cmty Consol. Sch. Dist. 202*, 2022 WL 1641684 (N.D. Ill. May 24, 2022) ........................................... 36, 37, 38

*Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248 (11th Cir. 2010) ...........27, 29, 31, 36, 38, 39, 41, 44, 46, 47, 48, 50, 52, 53, 58, 59, 62, 63

*Floyd v. Waiters* 171 F.3d 1264 (11th Cir. 1999) ...................................... 27

*Floyd v. Waiters,* 133 F.3d 786 (11th Cir. 1998) ................................ 28, 29

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) 26, 27, 37, 42

*Hackett v. Fulton Cnty. School Dist.*, 238 F. Supp. 2d 1330 (N.D. Ga. 2002)

.................................................................................................... 49

*Hartley v. Parnell*, 193 F.3d 1263 (11th Cir. 1999) .......................... 47, 48

*Hawkins v. Sarasota Cnty. Sch. Bd.*, 322 F.3d 1279 (11th Cir. 2003) ... 29

*Hill v. Cundiff*, 797 F.3d 948 (11th Cir. 2015) ......................................... 29

*J.B. v. Klein Indep. Sch. Dist.*, 2020 WL 813020 (S.D. Tex. Feb. 18, 2020)

.................................................................................................... 31

*J.C. v. Bd. of Regents of Univ. Sys. of Georgia*, 2022 WL 4331768 (N.D.

Ga. Sept. 19, 2022)................................................................................. 33

*J.F.K. v. Troup Cty. Sch. Dist.*, 678 F.3d 1254 (11th Cir. 2012) ............ 26

*Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069 (11th Cir. 2000)46, 47,

48, 58, 59, 63

*Ross v. Corp. of Mercer Univ.*, 506 F. Supp. 2d 1325 (M.D. Ga. 2007)... 42

*S.M. v. Sealy Independent School District*, 2021 WL 1599388 (S.D. Tex.

Apr. 23, 2021) ........................................................................................ 30

*Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702 (11th Cir. 2014) ....... 21

*Thomaston as Next Friend of M.T. v. Baldwin Cty. Bd. of Educ.*, 2019 WL 3069863 (S.D. Ala. June 25, 2019) ........................................................ 26

*Thompson v. Albany Area Community Service Bd.*, 620 F. Supp. 3d 1347 (M.D. Ga. 2022) .............................................................................. 49, 50

*Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002). ................................ 46

*Wamer v. Univ. of Toledo*, 27 F.4th 461 (6th Cir. 2022) .......................... 33

*Wilborn v. S. Union State Cmty. Coll.*, 720 F. Supp. 2d 1274 (M.D. Ala. 2010) ...................................................................................... 31, 32

*Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282 (11th Cir. 2007) ......................................................... 21, 26, 38, 39, 43, 44

**Statutes**

20 U.S.C. § 1681 *et seq.* .. iii, ix, 1, 3, 4, 19, 20, 23, 24, 25, 26, 27, 28, 29, 32, 33, 34, 36, 40, 41, 42, 49, 63, 64

28 U.S.C. § 1291 .................................................................................... x

28 U.S.C. § 1331 ................................................................................... ix

28 U.S.C. § 1343(a)(3)-(4) .................................................................... ix

28 U.S.C. § 1367(a) ............................................................................... ix

42 U.S.C. § 1983 ............. iii, ix, 1, 2, 3, 4, 19, 20, 25, 45, 46, 47, 52, 59, 64

**Rules**

Fed. R. App. P. 4(a) ................................................................................ x

viii

Fed. R. Civ. P. 12(b)(6) ................................................................. 1, 3, 33

## Statement of Jurisdiction

This is an appeal from the United States District Court for the Southern District of Alabama, Southern Division. Plaintiffs[1] assert claims against Defendant-Appellees ("Defendants[2]") for violations of federal law— Title IX and the Substantive Due Process Clause of the Fourteenth Amendment, brought under Section 1983—as well as claims for violation of Alabama law. The district court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343(a)(3)-(4) (civil rights), and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

On March 27, 2023, the district court entered an Order,[3] dismissing Plaintiffs' federal claims with prejudice and declining to exercise

---

[1] "Plaintiffs" include Rachael DeMarcus, Alexis Silver, Caitlin Tipping, Meaghan Jones, Hannah Kazee, Hannah Johnson, Hannah Maddux, and Maddie Soboleski.

[2] "Defendants" include The University of South Alabama ("South"), Alexis Meeks-Rydell, Joel Erdmann, Rob Chilcoat, Patricia Gandolfo, Jinni Frisbey and Chris Moore. "University Defendants" is also used hereinafter to refer to all Defendants other than Meeks-Rydell

[3] Throughout this brief, the "Order" means the district court's order granting Defendants' Motions to Dismiss and dismissing Plaintiffs' claims with prejudice. (Doc. 74).

supplemental jurisdiction over Plaintiffs' remaining state law claims. (Doc. 74). The district court entered a final judgment on April 17, 2023. (Doc. 75). On May 17, 2023, Plaintiffs timely filed a Notice of Appeal of the Order and judgment. (Doc. 76); Fed. R. App. P. 4(a). This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## Statement of the Issues

1.    Plaintiffs alleged that their former head coach, Alexis Meeks-Rydell ("Meeks-Rydell"), sexually harassed and abused them while they were student athletes on the volleyball team at South. South knew about Meeks-Rydell's misconduct during her tenure, as well as Meeks-Rydell's sexually harassing behavior in prior employment. Plaintiffs reported the sexual harassment to their assistant coaches and officials within South's athletic department, yet South failed to take any action to stop the known harassment for months. The district court granted Defendants' Fed. R. Civ. P. 12(b)(6) motions to dismiss holding that Plaintiffs' allegations were "conclusory." Did the district court err by dismissing Plaintiffs' Complaint under Title IX for failure to state a claim?

2.    Plaintiffs pled that Defendants violated their constitutional right to bodily integrity by subjecting them to sexual abuse and excessive corporal punishment pursuant to 42 U.S.C. § 1983. Acting under the color of law as state officials, Plaintiffs alleged Defendants either participated in sexually abusive conduct and excessive corporal punishment or failed to take any corrective action to address the sexually abusive conduct and excessive corporal punishment from continuing. Defendants knew the

consequences of such egregious conduct would violate Plaintiffs clearly established constitutional right to bodily integrity at the time of the abuse and took no action to prevent the continued and known violations. As to Meeks-Rydell, the district court held that Plaintiffs failed to plead any clearly established constitutional right to be free from unwanted touching by a coach; the lower court found that Plaintiffs failed to plead a substantive due process claim that would withstand qualified immunity against the University Defendants[4]. Did the district court err in granting Defendants' motion to dismiss Plaintiffs' claims pursuant to 42 U.S.C. § 1983?

## Statement of the Case

### I.    Nature of the Case

From December 2018 to January 2021, the Head Coach of South's volleyball team, Defendant Meeks-Rydell, sexually harassed Plaintiffs, members of the South's Volleyball Team (the "Team"), through a pattern of physical, mental, and emotional abuse. (Doc. 64, Third Amended

---

[4] The "University Defendants" are all Defendants except Meeks-Rydell. The University Defendants are The University of South Alabama ("South"), Joel Erdmann, Rob Chilcoat, Patricia Gandolfo, Jinni Frisbey and Chris Moore.

2

Complaint) ("Complaint") [5]. Defendant South knew that Meeks-Rydell had a reputation for sexually abusive, physically abuse and other improper behavior before it hired her, and it knew of the abuse as it took place. (*Id.*, ¶¶ 93, 168, 152, 136). Despite its knowledge, South took no action to terminate or otherwise discipline Meeks-Rydell until long after the damage was done. (*Id.*, ¶¶ 183-84). South's deliberate indifference to Meeks-Rydell's abuse of Plaintiffs violated Title IX and Section 1983.

This Court must reverse the district court's Order granting Defendants' Fed. R. Civ. P. 12(b)(6) motions to dismiss. The district court committed reversable error in dismissing Plaintiffs' Complaint by resolving factual inferences in favor of Defendants, applying a probability—as opposed to plausibility—requirement to Plaintiffs' pleadings, and applying improper legal standards. Although the district court found Plaintiffs' claims were ultimately unlikely to be proven, Plaintiffs were nevertheless legally entitled to the opportunity to prove their claims because their allegations satisfied the plausibility standard under Fed. R. Civ. P. 12(b)(6). Plaintiffs respectfully request this Court

---

[5] The operative complaint relevant to this appeal is Plaintiffs' Third Amended Complaint (Doc. 64) ("Complaint").

reverse the district court's Order, dismissing their Title IX and Section 1983 claims with prejudice.[6]

## II.    Statement of the Facts

Plaintiffs filed this action against South, members of its athletic department leadership, and members of its former volleyball coaching staff for violations of Title IX and Section 1983. All Plaintiffs were former members of South's women's volleyball team ("Team") led by head coach Meeks-Rydell from 2018-2021. (Doc. 64 Complaint, ¶¶ 9-16). Meeks-Rydell subjected Plaintiffs to years of sexually harassing treatment and abusive behavior. (*Id.*, ¶¶ 27, 29, 35-37, 44, 48). South's athletic department, including the athletic director,[7] two assistant athletic directors,[8] and both assistant coaches[9] of the Team knew of the abuse and harassment for years, yet did nothing to stop it. (*Id.*, ¶¶ 93, 168, 152, 136).

---

[6] Having dismissed all federal causes of action with prejudice, the district court declined to exercise supplemental jurisdiction over Plaintiffs' state law causes of action. (Doc. 74, Order at 55).

[7] Defendant Joel Erdmann was South's Athletic Director at all relevant times.

[8] Defendants Jinni Frisbey and Chris Moore were Assistant or Associate Athletic Directors employed by South at all relevant times.

[9] Defendants Robert Chilcoat and Patricia Gandolfo were assistant coaches of the Team at all relevant times.

The sexual harassment Meeks-Rydell forced upon the Team included, but was not limited to, "floor hugs," where she would force them to lay on the ground while she laid on top, "[making them] hug her and tell her that they love her." (*Id.*, ¶ 48). Meeks-Rydell would inappropriately pinch Plaintiffs' buttocks as they exited the bus on away games and would "force[] . . . Plaintiffs individually to constantly tell her that they love her in text messages and in person." (*Id.*). If Meeks-Rydell did not receive the sexual attention she wanted or if Plaintiffs did not submit to her inappropriate sexual behavior, Meeks-Rydell would punish them by emotionally and verbally abusing them, limiting their ability to play in games, or forcing them to participate in "breakfast clubs" where Plaintiffs would have to arrive at the gym as early as 4:00 a.m. and run and do other physical drills until the they "vomited, passed out, or cried due to inability to continue." (*Id.*, ¶ 44).

**A.  Meeks-Rydell inappropriately touched Plaintiffs, engaged in sexual conversations, forced them to undergo "floor hugs," "butt-pinching," and to "use her boobs as pillows," and subjected them to physical and emotional abuse when they did not submit to her unwanted sexual advances.**

In December 2018, South hired Meeks-Rydell as the Head Coach of South's Women's Volleyball Team. Plaintiffs were members of the Team from December 2018 through January 2021. (*Id.*, ¶¶ 9-16). For the next two years of her tenure, Meeks-Rydell pursued a consistent and relentless practice of sexual harassment and physical, verbal, and psychological abuse. (*Id.*, ¶¶ 35-37).

Meeks-Rydell subjected all Plaintiffs to continuous sexual abuse that included inappropriate touching, forced body contact, inappropriate sexually harassing text messages, and extensive verbal and physical abuse when Plaintiffs would not submit to Meeks-Rydell's unwanted sexual advances. (*Id.*, ¶ 38-48) Meeks-Rydell also attempted to form an inappropriate sexual relationship with all Plaintiffs. (*Id.*, ¶ 55-77). For example, Meeks-Rydell routinely attempted to groom Plaintiff Rachael DeMarcus ("DeMarcus") by retaliating against and manipulating her for not reciprocating the type of sexual relationship Meeks-Rydell sought. (*Id.*, ¶¶ 55-56). Meeks-Rydell's inappropriate sexual behavior included

6

forcing DeMarcus to tell Meeks-Rydell that she loved her, subjecting her to butt-pinching, forced hugs, and sexually harassing text messages. (*Id.*, ¶¶ 56-57). The inappropriate and sexually harassing text messages included messages such as "Why do you hate me?," "Do you still love me?," "I love you so much," and referring to DeMarcus as "babe."





(*Id.* ¶ 57).

The harassment included chains of sexually suggestive emoji text messages and other communications that DeMarcus reasonably perceived to be "sexual in nature." (*Id.*).





(*Id.*).

When DeMarcus did not submit to Meeks-Rydell's advances, Meeks-Rydell physically and emotionally abused DeMarcus, including slapping her across the face (*Id.*, ¶¶ 60-61), preventing her from seeing the Team's athletic trainer after serious injuries, and even subjecting her to such intense corporal punishment that DeMarcus developed Supra Ventricular Tachycardia (SVT), a heart condition that causes an irregularly fast or erratic heartbeat. (*Id.*, ¶¶ 70-76). DeMarcus's SVT diagnosis forced her to undergo significant medical treatment, including testing and wearing a heart monitor. (*Id.*). DeMarcus ultimately underwent an ablation procedure due to her SVT. (*Id.*).

Plaintiff Caitlin Tipping ("Tipping") also endured Meeks-Rydell's widespread sexual harassment. (*Id.*, ¶ 85). Meeks-Rydell regularly sexually harassed Tipping by subjecting her to "butt-pinching . . . forced

hugs . . . [and] being forced into telling Meeks-Rydell 'I love you'" (*Id.*). When Tipping did not cater to Meeks-Rydell wants, Meeks-Rydell verbally and mentally abused Tipping including swearing at her, accusing her of "faking her injuries," and even once forced Tipping to play on a fractured leg and damaged ligaments. (*Id.*, ¶¶ 86, 88-89).

The harassment was so severe that Tipping decided to withdraw from South to escape the harassment and abuse. (*Id.*, ¶¶ 21-22, 91-92). In January 2020, Defendants Chilcoat and Moore met with Tipping to discuss leaving South due to the sexual abuse she faced. (*Id.*, ¶¶ 91-94). To ensure the sexual harassment Tipping experienced would be out of the public eye, Defendants Chilcoat and Moore falsely told Tipping that Tipping would be required to pay a substantial "fine" if Tipping wanted to leave South. (*Id.*). They then convinced Tipping that the "fine" would be waived if Tipping wrote a letter to the NCAA stating that she was leaving South for reasons other than the emotional and sexual abuse she suffered under Meeks-Rydell. (*Id.*, ¶¶ 21-22, 91-93). Defendants' fraud and intimidation was successful. Tipping provided the letter to the NCAA and subsequently withdrew from South. (*Id.*, ¶¶ 90, 94).

11

Meeks-Rydell also regularly sexually harassed Plaintiff Hannah Kazee by subjecting her to butt-pinching, forced hugs, unwanted full body contact, and requiring Kazee to tell Meeks-Rydell "I love you." (*Id.*, ¶¶ 111, 117). If Kazee tried to prevent Meeks-Rydell from inappropriately touching her, Meeks-Rydell would retaliate against her. Meeks-Rydell reduced Kazee's playing time and ridiculed her as "crazy," because Meeks-Rydell knew Kazee suffered from a mental health condition and took anti-depressant medication. (*Id.*, ¶¶ 118-119). In October 2020, Meeks-Rydell forced Kazee to practice while she knew Kazee had a bulging disk in her back. Kazee collapsed during practice, leaving her unable to walk off the court, while Meeks-Rydell and Chilcoat yelled at her to leave the gym and denied her medical attention. (*Id.*, ¶¶ 114-116, 122-123).

Plaintiffs Alexis Silver, Meaghan Jones, Hannah Maddux, and Hannah Johnson, like all Plaintiffs, were subjected to sexual harassment including butt-pinching, floor hugs, "breakfast clubs," forced full body contact with Meeks-Rydell, and being required to tell Meeks-Rydell "I love you." (*Id.*, ¶¶ 80, 101, 132, 143). The sexual abuse was so severe and continual that Plaintiff Silver suffered daily panic attacks, causing 40-

12

pound weight loss in a single semester. (*Id.*, ¶ 81). When Plaintiffs did not provide Meeks-Rydell the sexual attention she was seeking, she retaliated by subjecting them to extensive physical and emotional abuse. For instance, Meeks-Rydell intentionally forced Plaintiff Jones to run extra sprints without her inhaler, causing Jones to have an asthma attack (*Id.*, ¶¶ 102-105); Meeks-Rydell required Plaintiff Maddux to refrain from accessing her inhaler during asthma attacks causing her to wheeze and gasp for breath in the fetal position and vomit so intensely her nose began to bleed (*Id.*, ¶¶ 144, 146); Meeks-Rydell subjected Plaintiff Johnson to corporal punishment by forcing her to participate in "breakfast clubs" and play through injuries. (*Id.*, ¶ 133).

In addition to the same sexual harassment Meeks-Rydell perpetrated on all Plaintiffs, Meeks-Rydell forced Plaintiff Soboleski to enter Meeks-Rydell's hotel room alone during trips for away games and, during one instance, was forced to "use her [Meeks-Rydell's] boobs as a pillow." (*Id.*, ¶ 159). The inappropriate conduct also included forcing Soboleski to hug her while Meeks-Rydell would kiss her on the forehead and cheek against her wishes, forcing Soboleski to spend extensive time alone with Meeks-Rydell at her residence, and luring Soboleski to Meeks-

Rydell's home under the guise of watching prior game film and not allowing her to leave. (*Id.*, ¶¶ 159-162). On one occasion, Meeks-Rydell forced Soboleski to dog sit for her. (*Id.*, ¶ 163). While Soboleski was dog sitting, Meeks-Rydell forced Soboleski to sleep in her bed and watched Soboleski via security cameras Meeks-Rydell had in the interior of her home without Soboleski's knowledge. (*Id.*) These actions were all part of a systematic effort by Meeks-Rydell to groom Soboleski to submit to her unwanted sexual advances.

**B.    South knew that Meeks-Rydell had a history of sexually abusing her players at other schools and was on actual notice of Meeks-Rydell's inappropriate behavior at South.**

Before Meeks-Rydell was hired by South in 2018, Meeks-Rydell had a reputation for instilling a pattern and practice of sexual harassment and physical and emotional abuse at her previous job as head coach of the University of West Alabama's volleyball team. (*Id.*, ¶¶ 27, 168). Due to Meeks-Rydell's reputation and inappropriate conduct that had taken place under the previous volleyball coaching staff at South, Defendant Frisbey notified members of the Team that she would closely supervise Meeks-Rydell's coaching staff when she was hired in 2018. (*Id.*, ¶¶ 20, 28). From Meeks-Rydell's date of hire in 2018 to her termination in 2021,

Plaintiffs and their parents communicated Meeks-Rydell's abuse to Defendants Erdmann, Moore, Frisbey, Chilcoat, and Gandolfo. (*Id.*, ¶¶ 20-22, 60-68 131-135, 152). Despite Defendant South's knowledge that Meeks-Rydell required close supervision due to her prior inappropriate conduct and receiving actual notice of inappropriate conduct at South, Defendants took no action for years. (*Id.*, ¶¶ 183-84)

In February 2019, Plaintiff Johnson suffered a concussion after having a volleyball spiked at her head by Chilcoat during a practice drill. (*Id.*, ¶¶ 131-135). The purpose of the drill, instituted by Meeks-Rydell, was to subject Plaintiffs to corporal punishment to groom them to submit to her sexual, emotional, and physical abuse. (*Id.*). In February 2019, Johnson's mother contacted Defendant Frisbey to inform her of improper practices under Meeks-Rydell, including sexual harassment and physical abuse, as well a safety concerns Johnson's mother had for her daughter. (*Id.*, ¶ 136). At that time, Frisbey was Meeks-Rydell's direct supervisor. (*Id.*, ¶ 20).

Also, in September 2019, Meeks-Rydell slapped Plaintiff DeMarcus across her face. Meeks-Rydell then ordered DeMarcus to refrain from telling the Team's athletic trainer about injuries to her ankle and head,

in retaliation for resisting her unwanted sexual advances. (*Id.*, ¶¶ 60-68). That same month, the Team's athletic trainer informed DeMarcus that she had a severe concussion from her head injury. . ." (*Id.*, ¶¶ 64-66, 68). The trainer notified Defendant Frisbey of DeMarcus's injury and commented on "the coaching staff's indifference to Plaintiff DeMarcus's health and safety." (*Id.*).

Moreover, in January 2020, Defendants Chilcoat and Moore assisted Meeks-Rydell in intimidating and manipulating Plaintiff Tipping by telling her she would be fined over $6,000 for leaving South if she did not write a letter to the NCAA, stating that she was leaving South for reasons other than the sexual abuse and harassment. (*Id.*, ¶¶ 21-22, 91-93). At that time, Defendant Moore was the University Associate Athletic Director. (*Id.*, ¶ 21).

In addition, in December 2020, Plaintiff Kazee's parents had a Zoom conference with Defendants Frisbey and Meeks-Rydell. (*Id.*, ¶ 125). The conference came after the October 2020 incident where Meeks-Rydell and Defendant Chilcoat berated Kazee as she crawled off the gym floor, unable to walk because the coaches forced her to practice with a bulging disk in her back. (*Id.*, ¶¶ 122-23). During the conference, Plaintiff Kazee

and her parents informed Frisbey of Meeks-Rydell's inappropriate conduct in detail, including her sexual abuse. (*Id.*). Also in December 2020, Plaintiffs Maddux and Soboleski informed Defendants Frisbey and Erdmann about the sexual, physical, and emotional abuse. (*Id.*, ¶¶ 152, 178). During this meeting, Plaintiffs Maddux and Soboleski detailed Defendant Meeks-Rydell's sexual harassment, including describing "occasions where Defendant Meeks-Rydell forced players to lay on top of her on the gym floor, forced Plaintiff Soboleski to cuddle in bed with her, and responded angrily when players declined to hug and express their affection for her." (*Id.*).

### C. South ignored Plaintiffs' complaints and actively sought to conceal details of the harassment and abuse they suffered from their coach.

From 2018 (when Meeks-Rydell was hired) South knew Meeks-Rydell had a reputation for instilling a pattern and practice of sexual harassment and physical and emotional abuse in her previous employment as a head university volleyball coach. (*Id.*, ¶ 168). South also knew of the ongoing sexual harassment and abuse of Plaintiffs. (*Id.*, ¶¶ 27, 168). During this time, Defendants Chilcoat and Gandolfo "were physically present and personally observed the physically abusive and

sexually harassing" conduct as they attended practices and games. (*Id.*, ¶ 179).

Defendant Frisbey spoke with Plaintiff Johnson's mother in February 2019 about the improper practices occurring under Meeks-Rydell, including sexual harassment, physical and emotional abuse, and safety concerns for her daughter. (*Id.*, ¶ 136). Defendant Frisbey learned from the Team's athletic trainer in September 2019 of "the coaching staff's indifference to Plaintiff DeMarcus's health and safety" after Meeks-Rydell's retaliation for resisting her unwanted sexual advances caused her injury. (*Id.*, ¶¶ 64-66, 68). Defendant Moore and Chilcoat in January 2020 worked with Meeks-Rydell to manipulate Plaintiff Tipping that she would be fined $6,000 if she told the NCAA that she was leaving South due to sexual abuse. (*Id.*, ¶¶ 21-22, 91-93). Defendant Erdmann attended the meeting with Defendant Frisbey where Plaintiffs Maddux and Soboleski detailed the sexual and physical abuse Meeks-Rydell regularly employed. (*Id.*, ¶ 152, 178). Rather than take action to prevent the continued sexual harassment and physical and emotional abuse, Defendant Frisbey responded by saying, "it wouldn't be the worst thing if you got kicked off the team." (*Id.*).

18

Despite years of actual knowledge of Meeks-Rydell's sexual harassment and physical and emotional abuse, it was not until January 2021 that South finally placed Meeks-Rydell on administrative leave. (*Id.*, ¶ 183).

## III. Course of the Proceedings and Disposition in the Court Below

In August 2021, Plaintiffs brought this action against Defendants South, Meeks-Rydell, Erdmann, Frisbey, Moore, Chilcoat, and Gandolfo. (Doc. 1). Plaintiffs amended their complaint in December 2021 (Doc. 31) and did so a second time in February 2022. (Doc. 55). On June 15, 2022, Plaintiffs amended their complaint a third time. Plaintiffs' Third Amended Complaint ("Complaint") is the operative complaint for this appeal. (Doc. 64, Complaint). The Complaint asserts claims against Defendants for violations of Title IX and Section 1983, as well as claims under Alabama law, including assault and battery, invasion of privacy, and outrage. (Doc. 64, Complaint, ¶¶ 189-948). Defendants[10] moved to dismiss the Complaint on July 6, 2022. (Docs. 66, 68). Plaintiffs filed responses in opposition on August 2, 2022. (Docs. 70, 71). Defendants

---

[10] The "University Defendants" (all Defendants other than Meeks-Rydell) and Meeks-Rydell filed two separate motions to dismiss on July 6, 2022.

served replies in support of their motion to dismiss on August 12, 2022 (Docs. 72, 73).

On March 27, 2023, the district court entered an order granting Defendants' motions to dismiss. (Doc. 74, Order). The district court held that Plaintiffs Complaint did not state a "plausible" claim for relief under Title IX or Section 1983 sufficient to withstand a motion to dismiss. (*Id.* at 56). The lower court determined that Plaintiffs did not provide notice of Meeks-Rydell's sexual harassment to an "appropriate person" employed by South until December 2020, and because South suspended Meeks-Rydell in January 2021, South could not be deliberately indifferent as a matter of law. (*Id.* at 29-42). In so holding, the district court rejected Plaintiffs allegations that South had actual knowledge of the harassment for years, erroneously labeling Plaintiffs' allegations "conclusory." (*Id.*).

The district court rejected Plaintiffs' Section 1983 claims because it found that Plaintiffs' did not plausibly allege (1) a clearly established constitutional right to be free from unwanted touching by a college coach; (2) that the Meeks-Rydell's conduct did not "shock the conscious" and; (3)

that the University Defendants were entitled to qualified immunity. (*Id.*,
at 52, 55). This appeal timely followed on May 17, 2023. (Doc. 76).

## IV.   Standard of Review

This Court reviews *de novo* a district court's decision granting a
motion to dismiss, accepting all the allegations in the Plaintiffs'
Complaint as true and viewing the facts "in the light most favorable to
the plaintiff." *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d
1282, 1291 (11th Cir. 2007). Plaintiffs cannot rely on conclusory
allegations, merely reciting the elements of a claim, or speculation. *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But a motion to dismiss
must be denied where the factual allegations in Plaintiffs' Complaint,
accepted as true, are sufficient to "state a claim to relief that is plausible
on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,
550 U.S. at 570); *accord Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702,
708 (11th Cir. 2014). A claim is facially plausible as long as "the facts
alleged enable 'the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged.'" *Simpson*, 744 F.3d at 708
(citing *Iqbal*, 556 U.S. at 678). Thus, if Plaintiffs' complaint states a
plausible claim for relief—"even if it strikes a savvy judge that actual

proof of those facts is improbable, and that a recovery is very remote and unlikely"—Defendants' motions to dismiss must be denied. *Twombly*, 550 U.S. at 556.

## Summary of the Argument

Plaintiffs seek this Court to reverse the district court's Order granting Defendants 'motion to dismiss. Plaintiffs commenced this action because Defendant Meeks-Rydell subjected Plaintiffs to intense and severe sexual, physical, and emotional abuse, which was permitted to continue by the University Defendants' indifference. The abuse left Plaintiffs emotionally and physically injured after being subjected to invasions of their bodily integrity by both sexual abuse and harassment, and extensive corporal punishment if Plaintiffs did not submit to Meeks-Rydell's advances. The district court erred in granting Defendant's motion to dismiss because Plaintiffs' Complaint contained plausible allegations, of which reasonable inferences could be drawn, that Plaintiffs were subjected to extreme sexual abuse and harassment.

Plaintiffs plausibly alleged that South violated Title IX because appropriate officials had actual knowledge of Meeks-Rydell's misconduct yet took no action for years. Meeks-Rydell subjected Plaintiffs to sexual abuse including butt-pinching, floor hugs, "breakfast clubs," forced full body contact with Meeks-Rydell including being forced to use her "boobs as pillows," and being required to tell Meeks-Rydell "I love you."

23

Defendants had actual knowledge of the risk of the sexual abuse to Plaintiffs not only from Plaintiffs and their parents, but also from Meeks-Rydell's reputation her past employment at another university. Although several appropriate officials within South's athletic department knew of the ongoing sexual harassment Meeks-Rydell perpetuated, South took no corrective action for years. South's hiring of Meeks-Rydell despite her reputation, combined with South's actual knowledge of ongoing sexual harassment, is deliberate indifference. Because Plaintiffs pled plausible allegations of violations of Title IX by South, the district court committed reversible error in granting South's motion to dismiss.

Plaintiffs also plausibly alleged that Defendants violated Plaintiffs' right of bodily integrity under 42 U.S.C. § 1983. This Court's precedent illustrates a recognized right to be free from sexual abuse and extensive corporal punishment. Plaintiffs' Complaint provides plausible allegations that such right was violated by Meeks-Rydell when she subjected Plaintiffs to continual sexual abuse, and then retaliated against them by administering extensive corporal punishment when they did not subdue to her advances. Further, Plaintiffs' Complaint provides plausible allegations, of which reasonable inference could be drawn, that the

24

University Defendants actively participated in the violation of Plaintiffs' right to bodily integrity as they were often present when the violations occurred or were deliberately indifferent. Therefore, the district court erred in granting Defendants' motion for summary judgment as Plaintiffs' Complaint provides plausible allegations of violations of their rights under Section 1983.

## Argument

### I.   The district court erred by dismissing Plaintiffs' Title IX claims.

Title IX provides that "[n]o person … shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to the discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. §1681(a); *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652-53 (1999). Although Title IX makes no explicit reference to sexual harassment or abuse, the Supreme Court has determined that such conduct can constitute "discrimination" in violation of the statute, which provides an implied private right of action for damages against a federally funded educational institution for sexual harassment. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 709, 717 (1979); *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 284-

90 (1998). Thus, sexual harassment is a form of gender discrimination under Title IX and teacher-on-student (and coach-on-student) sexual harassment falls within its purview. *See Thomaston as Next Friend of M.T. v. Baldwin Cty. Bd. of Educ.*, 2019 WL 3069863, at *3 (S.D. Ala. June 25, 2019).

A court must deny a defendant's motion to dismiss in a teacher-on-student (or coach-on-student) harassment claim, if the plaintiff makes plausible allegations that: (1) "a person with the authority to take corrective measures in response to actual notice of sexual harassment"— *i.e.*, an "appropriate person"; (2) had notice that was "sufficient to alert the school official of the possibility of the Title IX plaintiff's harassment"; and (3) the official responded with "deliberate indifference to the harassment." *See J.F.K. v. Troup Cty. Sch. Dist.*, 678 F.3d 1254, 1255-56 (11th Cir. 2012); *Williams*, 477 F.3d at 1293.

## A.    Plaintiffs pled facts that multiple Defendants were "appropriate persons" under Title IX.

Plaintiffs plausibly allege that Erdmann, Frisbey, Moore, Chilcoat, and Gandolfo each had authority to take corrective action to stop Meeks-Rydell's abuse of Plaintiffs. An "appropriate person" must, at a minimum, have "authority to take corrective action to end the discrimination."

*Gebser*, 524 U.S. at 290. Neither the Supreme Court nor this Court, however, has "clearly delineated which school officials are appropriate persons for purposes of Title IX actual notice." *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1254-55 (11th Cir. 2010). Nevertheless, the "ultimate question of who is an appropriate person is necessarily a fact-based inquiry because of the varying roles of educational officials." *Id.* at 1256.

The district court, however, erroneously dismissed Plaintiffs' allegations regarding Team assistant coaches Chilcoat and Gandolfo's status as "appropriate persons" under Title IX.[11] (Doc. 74, Order at 32). Plaintiffs pled that Chilcoat and Gandolfo were "appropriate persons" that had the authority to take corrective action in the event of wrongful or illegal conduct. (Doc. 64, ¶¶ 32, 49-50, 179-82). According to the district court, Chilcoat and Gandolfo could not, as a matter of law, be "appropriate persons" because they were assistant coaches. (Doc. 74, Order at 32). The district court cited *Floyd v. Waiters* 171 F.3d 1264 (11th Cir. 1999) (reinstating *Floyd v. Waiters,* 133 F.3d 786, 789 (11th Cir.

---

[11] The district court found that Plaintiffs plausibly alleged Defendants Erdmann, Frisbey, and Moore's status as "appropriate persons" under Title IX. (Doc. 74, Order at 32).

1998)[12] in support of its conclusion. In *Floyd,* a student-victim sued a Georgia school district for Title IX violations, arising from a sexual assault she suffered at the hands of a school security guard. *Id.* at 788. The *Floyd* plaintiffs claimed that Waiters, a janitorial supervisor, was an "appropriate person" to take corrective action to end the harassment. *Id.* at 789 n.2. This Court, on review of the district court's grant of *summary judgment* held, based upon the evidence presented, that knowledge of sexual harassment by an individual as far removed from the school board as Waiters could not subject the school board to Title IX liability. *Id.* at 793.

The district court's reliance on *Floyd* at the motion to dismiss stage, however, is misplaced. At the outset, the district court committed reversible error when it dismissed Plaintiffs' Title IX claims simply because it found Plaintiffs' averments *unlikely* to give rise to a claim. The Supreme Court and this Court have cautioned that the *Iqbal* pleading standard is not akin to a probability requirement. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010). In addition, the

---

[12] In 1999, this Court reinstated its prior decision in *Floyd*, issued in 1998, which was vacated by the Supreme Court with instructions to reconsider *Floyd* in light of *Gebser*. This Court restated its prior decision in *Floyd* in full.

*Floyd* decision was rendered on *summary judgment. Id.* The *Floyd* plaintiff—and this Court—had the benefit of an evidentiary record in rendering its decision. *Floyd*, 133 F.3d at 789 n.3. Unlike *Floyd,* the district court here chose to make a sweeping legal determination—that assistant coaches can never be "appropriate persons" under Title IX—on a motion to dismiss, despite this Court's holding that it is "necessarily a fact-based inquiry." *Broward*, 604 F.3d at 1254-55; (Doc. 74, Order at 33).

Moreover, even if *Floyd* supported the district court's pronouncement (it does not), *Floyd* is an outlier in this Circuit's post-*Gebser* Title IX jurisprudence. In numerous decisions since *Floyd,* this Court has refrained from issuing hard-and-fast definitions regarding what officials may be appropriate persons—even on summary judgment. *See e.g.*, *Broward*, 604 F.3d at 1255; *Hawkins v. Sarasota Cnty. Sch. Bd.*, 322 F.3d 1279, 1288 (11th Cir. 2003); *Davis v. DeKalb Cnty. Sch. Dist.*, 233 F.3d 1367, 1372 (11th Cir. 2000). In contrast, when this Court has weighed in on which school officials can be "appropriate persons," this Court has done so with the benefit of an evidentiary record on summary judgment. *See Hill v. Cundiff*, 797 F.3d 948, 971 (11th Cir. 2015) ("No

evidence in the record suggests teacher's aides at Sparkman have the authority to discipline students for sexual harassment.").

On a motion to dismiss, the district court was charged only with ensuring the Complaint alleged "enough facts to raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (citing *Twombly*, 550 U.S. at 556). For this reason, at the motion to dismiss stage, district courts often decline to hold that "assistant" positions—including assistant coaches, like Chilcoat and Gandolfo—cannot qualify as "appropriate persons" for purposes of Title IX as a matter of law. *See, e.g.*, *S.M. v. Sealy Independent School District*, 2021 WL 1599388, at *5 (S.D. Tex. Apr. 23, 2021) (finding facts alleged allowed plausible inference that athletic director, *assistant coach*, and head coach were appropriate persons with "power to halt the abuse"); *C.K. v. Wrye*, 2015 WL 5099308, at *6 (M.D. Pa. Aug. 31, 2015) (declining to dismiss a Title IX claim because court could not yet determine whether a teacher's aide had authority to take corrective action); *J.B. v. Klein Indep. Sch. Dist.*, 2020 WL 813020, at *8 (S.D. Tex. Feb. 18, 2020), *report and recommendation adopted sub nom. J. B. v. Klein ISD*, , 2020 WL 1156121 (S.D. Tex. Mar. 9, 2020) ("The Court has

30

found no authority for the proposition that a teacher, or any school employee below the level of an assistant principal, cannot be an 'appropriate person' as a matter of law.").

Even if one were to speculate that Chilcoat and Gandolfo did not have the authority to "correct" the head coach, the district court should have still found, drawing all reasonable inferences in the light most favorable to Plaintiffs, that evidence could reveal that the assistant coaches had an obligation to report sexual harassment to officials that did have authority to take corrective action. *See* Order at 32 n.3 "The ultimate question of who is an appropriate person is a necessarily fact-based inquiry because officials' roles may vary among universities" citing *Broward*, 604, F.3d at 1256. Here, the Complaint plausibly alleges, when viewed in the light most favorable to Plaintiffs, that Chilcoat and Gandolfo, as assistant coaches of a NCAA Division I volleyball team, had the obligation "to collect complaints from [members of the team] and report them to officials endowed with the power to fire or discipline." *Wilborn v. S. Union State Cmty. Coll.*, 720 F. Supp. 2d 1274, 1306 (M.D. Ala. 2010).

In *Wilborn*, the Middle District of Alabama denied summary judgment on a Title IX claim based upon notice provided to a trucking school "program coordinator" who lacked the power to fire the harassers. *Id.* 1306-07. The *Wilborn* plaintiff was the only female participant in a program intended to train individuals to be hired as truck drivers. *Id.* at 1283. The plaintiff experienced sexual harassment from the outset of the program. *Id.* at 1287. The *Wilborn* plaintiff reported the sexual harassment to her "program coordinator" numerous times—it was undisputed the "program coordinator" did not relay the plaintiff's complaints. *Id.* at 1287-90. Denying summary judgment, the Middle District of Alabama found that the program coordinator was an "appropriate official" under Title IX. *Id.* at 1306. The court noted that the *Wilborn* plaintiff had produced evidence that: (1) the school instructed program participants to report "grievances" to the program coordinator; and (2) the school imposed an obligation on the program coordinator to report grievances such as sexual harassment to his supervisor. *Id.* at 1306.

Despite the clear legal standard, the district court, failed to afford Plaintiffs plausible inferences regarding Chilcoat and Gandolfo's sexual

harassment reporting obligations in a modern-day university setting. *See J.C. v. Bd. of Regents of Univ. Sys. of Georgia*, 2022 WL 4331768, at *1 (N.D. Ga. Sept. 19, 2022) (discussing, on summary judgment, university sexual harassment reporting policy obligating wide-range of university employees to report sexual harassment). The district court should have inferred that Chilcoat and Gandolfo, like the program coordinator in *Wilborn*, had a university-imposed obligation to report sexual harassment to a higher official such as Erdman, Frisbey, or Moore. At a minimum, Plaintiffs were entitled to conduct discovery to reveal the extent of control possessed by Defendants Chilcoat and Gandolfo to take corrective action or their obligation to report sexual harassment. Indeed, *Twombly, Iqbal,* and this Court's Fed. R. Civ. P. 12(b)(6) precedent *require* the district court to resolve even "fanciful" factual inferences in favor of Plaintiffs. *Iqbal*, 556 U.S. at 681. Yet, "[i]t appears that the district court did the opposite, drawing all reasonable inferences in favor of [South]." *Wamer v. Univ. of Toledo*, 27 F.4th 461, 472–73 (6th Cir. 2022), cert. denied, 214 L. Ed. 2d 253, 143 S. Ct. 444 (2022). The district court's error in determining assistant coaches cannot be Title IX "appropriate officials" as a matter of law requires reversal.

33

**B.    The district court committed error by applying a heightened Title IX actual notice standard.**

South knew of Defendant Meeks-Rydell's abuse of Plaintiffs but failed to stop it. As discussed above, Plaintiffs plausibly allege that Defendants Chilcoat and Gandolfo were "appropriate persons" under Title IX. Plaintiffs not only allege that Defendants Chilcoat and Gandolfo knew of the harassment, but they were complicit in Defendant Meeks-Rydell's actions. (Doc. 64, ¶¶ 179-81) Despite witnessing and participating in much of Defendant Meeks-Rydell's misconduct, for approximately two years, Defendants Chilcoat and Gandolfo allowed Meeks-Rydell's pattern of abuse and sexual harassment to continue unabated. (*Id.*). Defendants Chilcoat and Gandolfo's actual knowledge of the harassment the Team underwent alone satisfies the actual notice requirement under Title IX.

Assuming *arguendo* that notice to the assistant coaches was insufficient (it is not), Plaintiffs pled that South's athletic director, Defendant Erdmann, and assistant athletic directors, Defendants Frisbey and Moore, knew that Defendant Meeks-Rydell had a reputation for engaging in sexually harassing conduct from her prior employment at another university. (Doc. 64, ¶¶ 168–69).  In addition, in February 2019,

34

Plaintiff Johnson's parents informed Defendant Erdmann of Meeks-Rydell's abuse and inappropriate conduct—which included sexual harassment, unwanted sexual contact, and retaliation. (*Id.*, ¶¶ 132-35). And in n January 2020, Defendant Moore knew of Meeks-Rydell's sexually harassing conduct from Plaintiff Tipping long before South suspended her in January 2021. (*Id.*, ¶¶ 90–96, 183). Finally, in December 2020, Plaintiffs Maddux and Soboleski informed Defendant Frisbey of the sexual harassment in a meeting with Defendants Frisbey and Erdmann. (*Id.*, ¶¶ 152, 159). The district court correctly found that Plaintiffs Kazee and Soboleski's December 2020 meeting with Frisbey and Erdmann was sufficient notice to South. (Doc. 74, Order at 39-40). The district court therefore concluded that Plaintiffs provided actual notice in December 2020. (*Id.*).

Despite extensive and proper pleading regarding notice on behalf of the Defendants and precedent to the contrary, the district court nonetheless erred by holding that South's athletic department leadership's pre-hire knowledge of Meeks-Rydell's prior sexual harassment and reputation was insufficient actual notice.

The law of Title IX's actual notice requirement in teacher-on-student sexual harassment cases in this Circuit does not require that an appropriate person "witness or be told about" ongoing sexual harassment and fail to act. *But see* (Doc. 74, Order at 35-36) (citing *Doe A v. Plainfield Community Cmty Consol. Sch. Dist. 202*, 2022 WL 1641684 (N.D. Ill. May 24, 2022)); *see also C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536, 549-50 (7th Cir. 2022) (en banc) (holding in a teacher-on-student case that "misconduct rising to the level of sex discrimination" must precede, and be the subject of, notice to the responsible official"). In this Circuit, actual notice is satisfied when "a supervisory school official knows ... that a school employee is a *substantial risk* to sexually abuse children." *Broward,* 604 F.3d at 1259. "[L]esser harassment may still provide actual notice of sexually violent conduct, for it is the risk of such conduct that the Title IX recipient has the duty to deter." *Id.* at 1258-59. The simple fact that prior incidents of sexual harassment are unconfirmed does not, as a matter of law, absolve a Title IX funding recipient of liability. *Id.*

The district court, however, improperly rejected Plaintiffs' allegations of South's knowledge of Meeks-Rydell's prior reputation as sufficient notice under Title IX. (Doc. 74, Order at 36.) In addition to

36

erroneously labeling Plaintiffs allegations "conclusory," the district court opined that permitting such an allegation would be akin to a "should have known" standard of actual notice. (*Id.*). The district court is correct that a constructive notice standard was rejected by the Supreme Court in *Gebser*. *Gebser*, 524 U.S. at 290. The dispositive issue here, however, is not constructive notice—it is the substance of actual notice. The district court, citing a Northern District of Illinois case featuring student-on-student discrimination, held that South's officials had to be on actual notice of discriminatory action itself. *Doe A*, 2022 WL 1641684 at *5. The district court summarized *Doe A* as follows:

> In resolving motion to dismiss, court held that the plaintiffs' assertion that Defendant Coaches "knew or should have known" that the football team had a longstanding custom, tradition or practice of assaulting team members in a sexual manner was wholly conclusory, and *that the plaintiffs had not identified a school official with the appropriate authority to take action who witnessed or was told about the attack and then failed to take action.*

(Doc. 74, Order at 36) (emphasis added).

In so holding, the *Doe A* court applied established Seventh Circuit law, which provides that "misconduct rising to the level of sex discrimination' must precede, and be the subject of, notice to the responsible official." *Madison Metro*, 34 F.4th at 549-50. In *Madison*

37

*Metro,* the Seventh Circuit held that, in teacher-on-student cases, Title IX does not permit institutional liability based solely on knowledge of the risk of future misconduct. *Id.* The Seventh Circuit has held that "[s]chool administrators have actual knowledge only of the incidents that they witness or that have been reported to them." *Doe A*, 2022 WL 1641684, at *4.

The Seventh Circuit's holding in *Madison Metro* as applied by the *Doe A* court, however, conflicts with the actual notice law of this Circuit regarding teacher-on-student discrimination. In contrast, in this Circuit "lesser harassment may still provide actual notice of sexually violent conduct, for it is the *risk of such conduct* that the Title IX recipient has the duty to deter. *Broward*, 604 F.3d at 1258 (emphasis added). The *Broward* court—a teacher-on-student case decided on summary judgment—explained the application of this Court's rationale by citing *Williams*, 477 F.3d at 1291. As interpreted by *Broward,* in *Williams*, a student-on-student case, this Court held that the plaintiff's complaint was sufficient to withstand a motion to dismiss because the defendant university "actively recruited the player and failed to sufficiently monitor his behavior despite actual notice of a history of lesser sexual

harassment." *Broward*, 604 F.3d at 1259 (citing *Williams*, 477 F.3d at 1294.) The *Williams* plaintiff pled that the university defendants had prior knowledge of the student's proclivities for sexual misconduct yet admitted him anyway with little safeguard. *Williams*, 477 F.3d at 1292. These facts presented "factually distinct scenario" from *Gebser* and *Davis* because the university knew of a substantial risk of discrimination upon admitting the student. *Id.*

The district court erred by applying a more stringent standard to actual notice than applied by this Court, and by discounting South's prior knowledge of Defendant Meeks-Rydell's reputation. The district court applied a Seventh Circuit standard which would have required Plaintiffs to allege that "'misconduct rising to the level of sex discrimination' must precede, and be the subject of, notice to the responsible official." *Madison Metro,* 34 F.4th at 549-50. This, however, is not the law of this Circuit. Plaintiffs pled that South had prior knowledge of Meeks-Rydell's history of engaging in sexual harassment, including at the University of West Alabama. (Doc. 64, ¶¶ 168–169). Applying *Broward* and *Williams*, Plaintiffs' Complaint satisfies actual notice from the date of Meeks-

Rydell's hiring. The district court's error on this element therefore requires reversal.

Even if Meeks-Rydell's reputation was not sufficient actual notice, however, Plaintiff Johnson's and Tipping's allegations, combined with Meeks-Rydell's reputation, are sufficient to satisfy the actual notice requirement under Title IX. In February 2019, Plaintiff Johnson's parents informed Defendant Erdmann of Meeks-Rydell's abuse and inappropriate conduct—which included sexual harassment, unwanted sexual contact, and retaliation. (*Id.,* ¶¶ 132-35). Plaintiffs Complaint plausibly alleges that Defendant Associate Athletic Director Moore also knew in January 2020 that Tipping was threatened to be "fined" $6,000 if she did not pen a letter stating that she was leaving South for reasons other than the sexual abuse she endured from Meeks-Rydell. (Doc. 64, ¶¶ 90-94). Further, the districts court's conclusion that Defendant Moore was not on notice is erroneous, as the Complaint plausibly alleges that Defendant Moore participated in manufacturing the fine. (*Id.*, ¶¶ 91-93).

The district court failed to accept either well-pled allegation and failed to draw all reasonable inferences in Plaintiffs' favor, as it was required to do, regarding the notice provided to assistant athletic director

Moore in January 2020. (*Id.* at ¶¶ 90–96). On the Complaint's face, both well-pled allegations provide enough plausible facts "to raise a reasonable expectation that discovery" could reveal evidence that South knew of Meeks-Rydell's previous reputation and was on notice, and that South was on notice in January 2020 when Moore knew about the abuse from Plaintiff Tipping. *Am. Dental Ass'n*, 605 F.3d at 1289. The district court incorrectly rejected these plausible allegations as "conclusory" and insufficient to impute actual notice on South. The district court's rejection of Plaintiffs' allegations was reversible error, as the Complaint contains plausible factual allegations that South was on notice from the moment Meeks-Rydell was hired, in February 2019, and in January 2020.

> **C.   South failed to supervise Meeks-Rydell, who it knew had a prior reputation for sexual harassment, and failed to act when it was directly informed of her sexual harassment of Plaintiffs. The district court erred in holding that Plaintiffs did not plead deliberate indifference.**

Under Title IX, school administrators are deliberately indifferent if their "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Broward*, 604 F.3d at 1259. A university acts with deliberate indifference when its actions amount to "an official decision by the recipient [of federal funds] not to remedy the

violation." *Gebser*, 524 U.S. at 290. To state a claim under Title IX "the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Davis,* 526 U.S. at 645. "In other words, courts can find a Title IX violation when a university exhibits deliberate indifference before an attack that makes a student more vulnerable to the attack itself, or when a university exhibits deliberate indifference after an attack that causes a student to endure additional harassment." *Ross v. Corp. of Mercer Univ.*, 506 F. Supp. 2d 1325, 1346 (M.D. Ga. 2007); *see also Davis*, 526 U.S. at 645.

Plaintiffs plausibly allege that South knew of Defendant Meeks-Rydell's reputation for harassment from prior employment at the University of West Alabama. (Doc. 64, Complaint, ¶ 168). The district court, citing *Gebser* and *Davis,* incorrectly held that South could not be deliberately indifferent as a matter of law because South did not receive actual notice of harassment until December 2020, South suspended Meeks-Rydell in January 2021, and Plaintiffs did not experience further harassment after December 2020. (Doc. 74, Order, at 41). The district court reached its conclusion by erroneously finding that South did not have actual notice until December 2020. (*Id*.). As discussed above*,* the

district court should have found that Plaintiffs plausibly alleged actual notice from the moment Defendant Meeks-Rydell was hired due to South's prior knowledge of her reputation for sexual harassment.

South's prior knowledge of Defendant Meeks-Rydell's reputation distinguishes this case from *Gebser* and *Davis,* where the school district had no advance knowledge of teacher or student propensities for sexual harassment. *Williams*, 477 F.3d at 1292. This Court's decision in *Williams* is again instructive. In *Williams,* this Court held that a university's admission of a student with a known history of sexual misconduct without any safeguard was sufficient to satisfy the deliberate indifference[13] standard under Title IX. *See Williams*, 477 F.3d at 1296. By "placing [Meeks-Rydell] in [charge of the volleyball team] and failing to supervise [her] in any way…[South] substantially increased the risk of sexual harassment among members of the volleyball team and on its campus." *Id.* In other words, South's prior knowledge of Meeks-Rydell's reputation and the risk it caused to the Team is sufficient alone to state

---

[13] Unlike the case before the Court, Williams is a student-on-student discrimination case. Student cases feature a more stringent standard of deliberate indifference. To be sure, the *Williams* court's holding that the plaintiff stated a deliberate indifference claim hinged on more than just the university's prior knowledge of the student's reputation, but these additional elements are not relevant to the case at bar.

a claim for deliberate indifference. *Id.; see also Broward,* 604 F.3d at 1262.

But Plaintiffs' allegations of deliberate indifference do not rest solely on South's prior knowledge of Defendant Meeks-Rydell's reputation. South's deliberate indifference is evidenced by Plaintiffs' individual allegations as well. In February 2019, Plaintiff Johnson's parents informed Defendants Erdmann of Meeks-Rydell's abuse and inappropriate conduct—which included sexual harassment, unwanted sexual contact, and retaliation (Doc. 64, ¶¶ 132-35, 136-37, 171). In January 2020, Plaintiff Tipping met with Defendants Moore, Chilcoat, and Meeks-Rydell regarding her desire to leave South. Tipping wanted to leave South because of the sexual harassment and abuse she suffered under Defendant Meeks-Rydell. (*Id.*, ¶ 91). In concealing the true reason Tipping sought to withdraw, Defendants Moore, Chilcoat, and Meeks-Rydell fraudulent told Tipping that she would have to personally pay a $6,000 "fine" for leaving South. (*Id.*, ¶ 90-94). It was only after it became apparent that South could no longer conceal Meeks-Rydell's abuse, that it finally acted and placed Meeks-Rydell on administrative leave. (*Id.*, ¶ 183). Even then, however, South inexplicably allowed Defendant Meeks-

Rydell to maintain access and control over the Team, including permitting Meeks-Rydell to stay in contact with the Team and recruits, observe practice remotely, and discipline players through Chilcoat. (*Id.*, ¶¶ 184-85). As such any disciplinary action was illusory. It was not until February 26, 2021—two years after Plaintiff Johnson provided Defendant Erdmann actual notice of Meeks-Rydell's inappropriate behavior, including sexual harassment—that Meeks-Rydell resigned from her position as Head Coach of the Team. (*Id.* ¶¶ 136-37, 171). Thus, Plaintiffs properly and comprehensively pled that for two years Defendants failed to take any action, resulting in the systematic and continuous violation of Plaintiffs' constitutional rights.

Plaintiffs alleged significant and detailed facts on behalf of each Plaintiff and against each Defendant to plausibly support an allegation of deliberate indifference to survive a motion to dismiss.

## II.    The district court erred by dismissing Section 1983 claims.

Plaintiffs plausibly allege substantive due process violations, under Section 1983, against Defendants Meeks-Rydell, Erdmann, Frisbey, Moore, Chilcoat, and Gandolfo.

Section 1983 "provides every person with the right to sue those acting under color of state law for violations of federal constitutional and statutory provisions." *Broward*, 604 F.3d at 1265. To plausibly allege a claim under Section 1983 a plaintiff must demonstrate there has been a violation of his or her constitutional right by a government actor that is characterized as arbitrary or conscience-shocking. *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)). Further, the constitutional right violated must be a clearly established right at the time the violation occurs. *Vinyard v. Wilson*, 311 F.3d 1340, 1343 (11th Cir. 2002). Courts recognize the substantive due process right of bodily integrity—which includes the rights of students not to be subject to sexual, physical, and psychological abuse. *See Broward*, 604 F.3d at 1265-66 (recognizing right to be free from sexual abuse); *Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000) (recognizing right to be free from excessive corporal punishment).

46

**A.     The district court's Order disregards Supreme Court and Eleventh Circuit precedent that establishes a right of bodily integrity to be free from sexual abuse and excessive corporal punishment.**

The district court erroneously found that no controlling law established a right of bodily integrity at the time of the sexually harassing conduct in this case. Plaintiffs allege two violations to their bodily integrity that has been clearly established by this Court—the right to be free from sexual abuse and excessive corporal punishment. *See Broward*, 604 F.3d at 1265-66; *Neal*, 229 F.3d at 1074.

In *Broward*, Plaintiff Doe alleged she had a constitutional right not to be sexually abused by her teacher. *Broward*, 604 F.3d at 1265-66. For purposes of Doe's appeal, this Court assumed that Doe had such a right, despite later finding that Doe had not established the principal's supervisory liability for her Section 1983 claim. *Id.* at 1266-67; *see also Hartley v. Parnell*, 193 F.3d 1263, 1268 (11th Cir. 1999) (assuming for purposes of appeal that Hartley had a right to not be sexually abused by a state official acting under color of state law). Under *Broward*, to plausibly allege supervisory liability for violations of one's right to be free from sexual abuse, the abuse must be "'obvious, flagrant, rampant and of

47

continued duration, rather than isolated occurrences.'" *Broward*, 604 F.3d at 1266 (quoting *Hartley*, 193 F.3d at 1269).

In *Neal*, this Court also recognized a right to be free from excessive corporal punishment and reversed the district court's finding that excessive corporal punishment did not give rise to a substantive due process claim. *Neal*, 229 F.3d at 1072. In doing so, this Court determined that the plaintiffs could have a valid substantive due process right to be free from excessive corporal punishment when the punishment is "tantamount to arbitrary, egregious, and conscience-shocking behavior." *Id.* at 1075. Considering this Court's previous recognition of the right to one's bodily integrity, including to be free from sexual abuse and excessive corporal punishment, the district court erred in finding that such rights were not clearly established.

Further, as set forth below, Plaintiffs plausibly allege that their clearly established right to bodily integrity was violated directly by Defendants Erdmann, Frisbey, Moore. Plaintiffs pled that these Defendants are liable in their capacities as supervisors for failing to take any corrective action, despite having knowledge of Meeks-Rydell's misconduct.

48

**B.    Plaintiffs plausibly allege Meeks-Rydell's violation of Plaintiffs' constitutional right of bodily integrity.**

As set forth above, "[s]everal federal courts have recognized a 'liberty' interest by a student in his 'bodily integrity,' such that when a state actor, such as a public-school teacher, violates that 'bodily integrity,' a claim under the Fourteenth Amendment arises." *Hackett v. Fulton Cnty. School Dist.*, 238 F. Supp. 2d 1330, 1353 (N.D. Ga. 2002) (collecting cases). Furthermore, "a *constitutional* liberty interest in 'bodily integrity,' found by courts to inhere in the Fourteenth Amendment is presumably separate and distinct from the *statutory* right to be free from sex discrimination in federal programs provided by Title IX." *Id.* at 1354. As such, "the statutory right to be free from discrimination on the basis of sex while participating in a federally funded program and the constitutional right to be free from a violation of one's bodily integrity at the hands of a state actor are two distinct rights, even if the same conduct is asserted to support a claim on both grounds." *Id.* Thus, "[s]ubstantive due process bars any abuse of power by a state actor that 'shocks the conscience' and protects individuals' liberty interest in their bodily integrity." *Thompson v. Albany Area Community Service Bd.*, 620 F. Supp. 3d 1347, 1364 (M.D. Ga. 2022). And the "Eleventh Circuit recently

49

explained that 'all sexual misconduct is egregious,'" especially when a state actor uses the power of his/her position to commit such sexual misconduct. *Id.*

Here, Plaintiffs' Complaint plausibly alleges that Meeks-Rydell used her position of power to commit sexual misconduct against Plaintiffs. Meeks-Rydell engaged in an open and obvious pattern and practice of sexual harassment and other physical and emotional assault. (Doc. 64, Complaint, ¶ 1); *Broward*, 604 F.3d at 1266. The systemic and open and obvious abuse took place from January 1, 2019, through the 2019-2020 academic school year. (Doc. 64, Complaint, ¶ 1). The conduct plausibly alleged by Plaintiffs included sexual harassment and assault (*Id.*, ¶¶ 49-50, 59-61, 65, 83-84, 89, 105, 115, 117-18, 132, 143, 145, 157, 159- 63), severe emotional and psychological abuse (*Id.*, ¶¶ 37-42, 81, 86, 90-95, 104, 119-24, 133, 164- 65), and extreme corporal punishment. (*Id.*, ¶¶ 42-46, 50-51, 60, 65-73, 87-89, 102-105, 113, 133-36, 144, 146-51, 158). Plaintiffs further plausibly allege, *in addition to sexual misconduct*, that Defendant Meeks-Rydell violated Plaintiffs' constitutional right, established by this Court in *Neal*, to be free from excessive corporal punishment including, but not limited to:

- Forcing Plaintiff DeMarcus to conceal a serious concussion and causing her to suffer Supra Ventricular Tachycardia and nonetheless forcing her to engage dangerous physical activity (*Id.*, ¶¶ 65-73);

- Causing Plaintiff Silver to lose 40 pounds in one semester from anxiety caused by Meeks-Rydell's punishment (*Id.*, ¶ 81);

- Forcing Plaintiff Tipping to play on a fractured leg and torn ligaments and fraudulently misleading her to conceal Meeks-Rydell's misconduct (*Id.*, ¶¶ 87-95);

- Forcing Plaintiff Jones, despite knowing she suffered from asthma, to run extra sprints and denying her the use of her prescribed inhaler (*Id.*, ¶ 105);

- Forcing Plaintiff Kazee to play through a bulging disc in her back resulting in a serious nerve injury and her inability to walk of the gym floor and subsequent hospitalization (*Id.*, ¶¶ 113-24);

- Purposefully causing Plaintiff Johnson to suffer a concussion after allowing Defendant Chilcoat to spike a volleyball at her head (*Id.*, ¶¶ 134-35); and

- Forcing Plaintiff Maddux to engage in excessive physical activity, despite knowing she suffered from asthma, and denying her the use of her prescribed inhaler causing her wheeze and gasp for breath in the fetal position and vomit so intensely her nose began to bleed (*Id.,* ¶¶ 146-51).

The district court erred in finding that such allegations do not plausibly allege that Meeks-Rydell violated the constitutional right of bodily integrity of Plaintiffs, and further, that such right was not clearly established at the time the conduct occurred.

## C. Plaintiffs plausibly allege supervisory liability against Erdmann, Frisbey, and Moore.

Supervisory officials are liable under Section 1983 for the unconstitutional acts of their subordinates when they personally participate in the alleged constitutional violation or there is a "causal connection between actions of the supervising official and the alleged constitutional deprivation." *Broward*, 604 F.3d at 1266. The requisite causal connection can be established in the following circumstances: (1)

when a "history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so" or (2) when a supervisor's "improper custom or policy results in deliberate indifference to constitutional rights." *Id.*

Here, Plaintiffs plausibly allege that Erdmann, Frisbey, and Moore were supervisors of Meeks-Rydell at South. (Doc. 64, Complaint, ¶¶ 19-21, 49, 174-76, 187-88). Thus, Erdmann, Frisbey, and Moore are liable under Section 1983, if they participated in the constitutional violations or if there is a causal connection between a supervisor's actions and the violations. *See Broward*, 604 F.3d at 1266.

The Complaint contains plausible allegations that Erdmann, Frisbey, and Moore participated in the violations of Plaintiffs' constitutional rights and that they not only ignored Meeks-Rydell's history of widespread abuse, but they actively attempted to conceal it. As set forth above in the context of Plaintiffs' Title IX claims, Plaintiffs plausibly allege that Erdmann, Frisbey, and Moore were on actual notice of Meeks-Rydell's misconduct and were deliberately indifferent. For example, Frisbey was on actual notice of Meeks-Rydell's reputation for sexually harassing behavior and other physical and emotional abuse.

53

Defendant Frisbey was also aware of the prior inappropriate conduct in the South's women's volleyball program and promised that she would personally supervise Meeks-Rydell's coaching staff to ensure that there would be no inappropriate conduct. (Doc. 64, ¶ 28). Despite her actual knowledge, however, Frisbey did nothing to prevent Meeks-Rydell's widespread, pervasive abuse. Additionally, Erdmann, Frisbey, and Moore received direct complaints about Meeks-Rydell's unconstitutional conduct from Plaintiffs and/or their parents and did nothing to protect Plaintiffs. (*Id.* ¶¶ 125-26, 152, 178). Erdmann, Frisbey, and Moore's lack of action led to continual constitutional violations, including:

- Defendant Frisbey receiving complaints from the Team's athletic trainer about Meeks-Rydell's indifference to Plaintiff's safety and health (*Id.*, ¶ 68);

- Defendant Moore assisting Meeks-Rydell and Chilcoat in manipulating and threatening Plaintiff Tipping that she would have a fine if she told the NCAA about the sexual abuse (*Id.*, ¶¶ 91-95);

54

- Defendant Frisbey attending the video conference where Plaintiff Kazee's parents explained Meeks-Rydell's inappropriate conduct in detail (*Id.*, ¶ 125);

- Defendant Frisbey attending the meeting with Plaintiff Johnson and her mother when her mother expressed her concerns for her daughter's safety (*Id.*, ¶ 136); and

- Defendants Erdmann and Frisbey attending the meeting in which Plaintiffs Maddux and Soboleski expressed their concerns about Meeks-Rydell's abuse, where Frisbey replied, "it wouldn't be the worst thing if you got kicked off the team" (*Id.*, ¶152).

Plaintiffs' Complaint is filled with plausible allegations that Defendants Erdmann, Frisbey, and Moore knew of the constitutional violations and did nothing to prevent the abuse or the violations from continuing.

### D. Plaintiffs plausibly allege that Defendants Erdmann, Frisbey, Moore, Chilcoat, and Gandolfo actively participated in Meeks-Rydell's violations of Plaintiffs' constitutional rights.

Plaintiffs plausibly allege that Defendants not only had actual notice of Meeks-Rydell's unconstitutional conduct, but actively attempted

to conceal it. (*Id.*, ¶¶ 50, 91-95, 152, 176, 184-88). Plaintiffs also allege that Defendants Erdmann, Frisbey, Moore, Chilcoat, and Gandolfo actively perpetuated and participated in Meeks-Rydell's violation of Plaintiffs' constitutional right to bodily integrity. Defendants attempts to perpetrate the constitutional violations caused:

- Plaintiff Tipping's extensive leg damage after being forced to play on a fractured leg and damaged ligaments (*Id.*, ¶ 87-89);

- Plaintiff Kazee suffering humiliation and emotional distress after Meeks-Rydell would refer to Kazee as "crazy" in front of the Team after learning she took anti-depressant medication (*Id.*, ¶ 119);

- Plaintiff Kazee suffering severe back pain after Meeks-Rydell and Chilcoat forced her to practice with a bulging disk in her back (*Id.*, ¶¶122-125);

- Plaintiff Johnson suffering a concussion after Meeks-Rydell instructed Chilcoat to spike a ball in her face (*Id,*. ¶135); and

- Plaintiffs Johnson and Maddux suffering severe asthma attacks after being forced to run as punishment without access to their prescribed inhaler (*Id.*, ¶¶ 102-105, 144, 146).

Further, not only did Defendants perpetrate the violations, but also actively participated and aided Meeks-Rydell in violating Plaintiffs' right to bodily integrity. Their participation includes Moore assisting Meeks-Rydell and Chilcoat in manipulating Plaintiff Tipping into disguising her sexual abuse by penning a letter to the NCAA falsely stating that she was leaving South for reasons other than Meeks-Rydell's abuse (*Id.,* ¶¶ 90-95); Frisbey telling Plaintiffs Maddux and Soboleski "it wouldn't be the worst thing if you got kicked off the team" in response to their complaints of abuse to her and Erdmann (*Id.,* ¶152); Chilcoat assisting Meeks-Rydell in verbally abusing Plaintiff Kazee after they forced her to practice with a bulging disk in her back (*Id.*, ¶ 123); Chilcoat assisting Meeks-Rydell in spiking balls towards Plaintiff Johnson's face in retaliation for her not submitting to Meeks-Rydell's unwanted sexual advances (*Id.*, ¶¶ 130-35); and Chilcoat and Gandolfo being physically present during practices when Meeks-Rydell engaged in sexually abusive conduct and subjected Plaintiffs to excessive corporal punishment (*Id.*, ¶ 170, 179).

These plausible allegations are sufficient to state a claim against Defendants for their deliberate indifference in failing to correct the

widespread, pervasive violations of Plaintiffs' substantive due process rights for actively participating in Meeks-Rydell's violations of Plaintiffs' constitutional rights. *See Broward*, 604 F.3d at 1265-66; *Neal*, 229 F.3d at 1074.

### E. Plaintiffs plausibly allege "arbitrary, egregious, and conscience-shocking" conduct.

The district court erred in finding that Plaintiffs did not plausibly allege "arbitrary, egregious, and conscience-shocking" conduct because the conduct did not rise to the level of extreme conduct. For conduct to be considered conscience-shocking, a Plaintiff must first establish that such conduct violated a constitutional right. *Davis*, 555 F.3d at 982. After a constitutional right is identified, whether the conduct in question "shocks the conscience" depends solely on each case's factual setting. *Lewis*, 523 U.S. at 848. The district court erred in its application of *Dacosta v. Nwachukwa* 304 F.3d 1045, 1048 (11th Cir. 2002) to the present case. In *Dacosta*, unlike here, the plaintiff failed to even allege the deprivation of a right secured by the United States Constitution, but rather alleged only the deprivation of a right under state law. *Id.* at 1048-49. As such, this Court did not reach whether the conduct in question—a simple battery

under state law—was sufficiently conscious-shocking for purposes of Section 1983. *Id.* at 1049.

Plaintiffs here, however, plausibly allege much more than a simple battery, including violations of their rights to bodily integrity to be free from sexual abuse and excessive corporal punishment as discussed above. Accordingly, the district court's holding that Defendants' conduct was not sufficiently conscious-shocking, as a matter of law, was erroneous. *See Broward*, 604 F.3d at 1265-66; *Neal*, 229 F.3d at 1074; *see also Albright v. Oliver*, 510 U.S. 266, 272 (1994) (recognizing that the "right to bodily integrity" is protected by substantive due process).

Plaintiffs alleged that Meeks-Rydell committed extensive and egregious sexual abuse that violated their right to bodily integrity. Meeks-Rydell subjected all Plaintiffs to continuous sexual abuse that included inappropriate touching, forced body contact, inappropriate sexually harassing text messages, and extensive verbal and physical abuse when Plaintiffs would not submit to Meeks-Rydell's unwanted sexual advances. (*Id.*, ¶ 38-48) Meeks-Rydell also attempted to form an inappropriate sexual relationship with all Plaintiffs. (*Id.*, ¶ 55-77). For example, Meeks-Rydell routinely attempted to groom Plaintiff DeMarcus

by retaliating against and manipulating her for not reciprocating the type of sexual relationship Meeks-Rydell sought. (*Id.*, ¶¶ 55-56). Meeks-Rydell's inappropriate sexual behavior included forcing DeMarcus to tell Meeks-Rydell that she loved her, subjecting her to butt-pinching, forced hugs, and sexually harassing text messages. (*Id.*, ¶¶ 56-57). The inappropriate and sexually harassing text messages included messages such as "Why do you hate me?," "Do you still love me?," "I love you so much," and referring to DeMarcus as "babe." The harassment was so severe that Tipping decided to withdraw from South to escape the harassment and abuse. (*Id.*, ¶¶ 21-22, 91-92). Meeks-Rydell forced Plaintiff Soboleski to enter her hotel room alone during trips for away games and, during one instance, was forced to "use her [Meeks-Rydell's] boobs as a pillow." (*Id.*, ¶ 159). The inappropriate conduct also included forcing Soboleski to hug her while Meeks-Rydell would kiss her on the forehead and cheek against her wishes, forcing Soboleski to spend extensive time alone with Meeks-Rydell at her residence, and luring Soboleski to Meeks-Rydell's home under the guise of watching prior game film and not allowing her to leave. (*Id.*, ¶¶ 159-162). On one occasion, Meeks-Rydell forced Soboleski to dog sit for her. (*Id.*, ¶ 163). While

Soboleski was dog sitting, Meeks-Rydell forced Soboleski to sleep in her bed and watched Soboleski via security cameras Meeks-Rydell had in the interior of her home without Soboleski's knowledge. (*Id.*) These actions were all part of a systematic effort by Meeks-Rydell to groom Soboleski to submit to her unwanted sexual advances.

Further, Plaintiffs plausibly allege that the violations of their constitutional rights were conscious shocking. *See Lewis*, 523 U.S. at 848. Plaintiffs' well-pled allegations of widespread, pervasive sexual abuse and corporal punishment illustrates Meeks-Rydell's conduct was so arbitrary and egregious it caused devastating physical and emotional injuries to Plaintiffs, including: Plaintiff DeMarcus being diagnosed with Supra Ventricular Tachycardia and being forced to wear monitors due to her condition (*Id.*, ¶¶ 65-73); Plaintiff Silver losing 40 pounds in a single semester (*Id*, ¶ 81); Plaintiff Tipping worsening a fractured leg and torn ligaments after Meeks-Rydell forced her to play through such injuries, (*Id.*, ¶¶ 87-95); Plaintiff Jones suffering from asthma attacks after being forced to run extra sprints and not be allowed to use her inhaler (*Id.*, ¶ 105); Plaintiff Kazee suffering serious nerve injury after being forced to play through a bulging disk in her back, later requiring hospitalization

(*Id.*, ¶¶ 113-24); Plaintiff Johnson suffering a concussion after having a volleyball to spiked at her head (*Id.*, ¶¶ 134-35); and Plaintiff Maddux suffering such intense asthma attacks after being denied access to her inhaler that she was caused to wheeze and gasp for breath in the fetal position and vomit so intensely her nose began to bleed (*Id.*,¶¶ 146-51). Plaintiffs plausibly allege that Meeks-Rydell's conduct is so arbitrary and egregious as to be conscience-shocking. The district court erred in holding otherwise.

### F.    The district court erred in finding the University Defendants were entitled to qualified immunity.

The district court erred in finding that the Defendants Erdmann, Frisbey, Moore, Chilcoat and Gandolfo were entitled to qualified immunity. (Doc. 74, Order, 53-55). A defendant is entitled to qualified immunity when: (1) the plaintiff has alleged the violation of a constitutional right; and (2) the right at issue was clearly established at the time of the defendants' misconduct. *Broward*, 604 F.3d at 1265.

As stated above, Plaintiffs plausibly allege both that the Defendants Erdmann, Frisbey, Moore, Chilcoat and Gandolfo violated Plaintiffs clearly established constitutional rights to bodily integrity, including to be free from sexual misconduct and corporal punishment.

Further, the right to bodily integrity, including the right to be free from sexual abuse and excessive corporal punishment, is clearly established, having been recognized by this Court for over a decade. *See Broward*, 604 F.3d at 1266 (recognizing right to be free from sexual abuse); *Neal*, 229 F.3d at 1074 (recognizing right to be free from excessive physical punishment). As such, the district court committed reversible error when it held that Defendants Erdmann, Frisbey, Moore, Chilcoat, and Gandolfo were entitled to qualified immunity.

## Conclusion

The district court committed reversible errors in a stark and alarming manner that deprived Plaintiffs of their day in court. Defendant Meeks-Rydell sexually harassed, and physically and emotionally abused and terrorized the Plaintiffs in violation of clearly established constitutional rights and Title IX. The Plaintiffs prepared a painstakingly detailed Complaint setting forth the way they were each abused over a multi-year period, and alleged detailed legal and factual bases for liability against each defendant. Plaintiffs have properly alleged Defendant South, through its employees, Defendants Erdmann, Frisbey, Moore, Chilcoat, and Gandolfo each had actual knowledge of

63

Defendant Meeks-Rydell's wrongful and detailed conduct and failed to take *any* corrective action for over two years—resulting in significant injury that has been pled in detail as to each Plaintiff. In addition to applying the wrong legal standard regarding actual notice, the district court failed to weigh the evidence in the light most favorable to the Plaintiffs; summarily determined fact questions, such as whether the Defendants Chilcoat and Gandolfo had the appropriate authority to take corrective action, and ignored the well-established constitutional right of bodily integrity.

Plaintiffs dedicated their young lives to pursue volleyball. They were abused and ignored in a profound and actionable manner. We ask this Honorable Court to apply its well-established Title IX and Section 1983 precedent to reverse the findings of the lower court.

Respectfully submitted this 26th day of July, 2023,


*/s/ Diandra "Fu" Debrosse Zimmermann*
Diandra "Fu" Debrosse Zimmermann
Kenneth P. Abbarno
Eli J. Hare
Elton H. Darby III
DICELLO LEVITT LLP
505 20th Street North, Suite 1500
Birmingham, AL 35203
Tel: (205) 453-6415
Fax: (205) 718-7688
fu@dicellolevitt.com
kabbarno@dicellolevitt.com
ehare@dicellolevitt.com
edarby@dicellolevitt.com

## Certificate of Compliance

I certify that this brief complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B) and 11th Cir. R. 32-4. This proportionally spaced brief utilizes 14-point Century Schoolbook font and contains 11,431 words according to Microsoft Word.

/s/ *Diandra "Fu" Debrosse Zimmermann*
Diandra "Fu" Debrosse Zimmermann

## Certificate of Service

I certify that on this July 26, 2023, I electronically filed a copy of the foregoing with the clerk of the Court using the CM/ECF system and served the following counsel of record via electronic mail and/or the Court's electronic filing system.

Celia J. Collins
Elizabeth Rehm
JOHNSTONE ADAMS, LLC
1 St. Louis Centre
1 St. Louis Street, Ste. 4000
Mobile, AL 36602 (251) 432-7682
cjc@johnstoneadams.com
edr@johnstoneadams.com
*Counsel for Defendant-Appellees*

Mary E. Pilcher
STEIN & PILCHER, LLC
Post Office Box 602
Fairhope, AL 36533-0602
mpilcher@mobilebaylaw.com
*Counsel for Defendant-Appellees*

Windy C. Bitzer
HAND ARENDALL HARRISON SALE, LLC
Post Office Box 123
Mobile, AL 36601
wbitzer@handfirm.com
*Counsel for Defendant-Appellees*

*/s/ Diandra "Fu" Debrosse Zimmermann*
Diandra "Fu" Debrosse Zimmermann

xiii